Filed 11/30/22  Cooper v. Technogym CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| JOHN COOPER,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>TECHNOGYM, S.p.A.,<br><br>        Defendant and Respondent. | A160941<br><br>(Alameda County<br>Super. Ct. No. RG17882459) |

Plaintiff John Cooper (Plaintiff) appeals from the trial court's order granting the motion to quash service of process filed by Technogym, S.p.A., an Italian company (hereafter, Technogym SpA) for lack of personal jurisdiction.  We affirm.

BACKGROUND

In December 2015, Plaintiff was injured on an exercise machine at a 24 Hour Fitness gym in California.  The machine was manufactured by Technogym SpA and was sold to 24 Hour Fitness by Technogym USA Corp. (hereafter, Technogym USA), a Washington corporation and a subsidiary of Technogym SpA.  In June 2019, Plaintiff filed the operative first amended

1

complaint alleging claims against 24 Hour Fitness, Technogym USA, and Technogym SpA.

Technogym SpA, appearing specially, moved to quash service of process for lack of personal jurisdiction. It submitted a declaration from Technogym SpA's "Industrial Director" averring Technogym SpA had no place of business, officers, employees, property, bank accounts, or agent for service of process in California; had never paid taxes or signed a contract in California; did not advertise, market, solicit business, or conduct business in California; did not design products for the California market; and did not ship products to California for use by California consumers. The Industrial Director further averred that the allegedly defective machine was designed and assembled in Italy, and that Technogym SpA "is a completely independent, distinct entity from" Technogym USA.

Technogym SpA also submitted a declaration from Technogym USA's "Service Director" averring Technogym USA's principal place of business is in New Jersey; it "acquires equipment in bulk from Technogym, S.p.A. based on the existing and anticipated needs" of customers; pays third party companies to transport the purchased equipment to the United States; maintains its inventory in the United States; and negotiates sales, arranges delivery and installation, and receives payment for its equipment. The Service Director further averred that Technogym SpA "is not involved in the day-to-day operations of Technogym[] USA."

With his opposition, Plaintiff submitted excerpts of Technogym SpA's annual reports from 2015, 2016, 2017, and 2018 (a complete report for 2017 was submitted with Technogym SpA's reply papers), pointing to certain statements about "Technogym": identifying California customers such as "Facebook and Google in Silicon Valley," Stanford University, and a Los

Angeles hotel; describing participation in two California trade shows; and discussing United States customers and expansion. Plaintiff also submitted two 2019 internet job postings for California sales developers with the employer "Technogym." Plaintiff submitted excerpts from the deposition of 24 Hour Fitness's equipment standards manager since March 2018 who testified his "Technogym" account representative was located in Southern California. Finally, Plaintiff submitted printouts from the website <www.technogym.com/us> stating the website was "operated by" Technogym SpA with "[p]roducts and services supplied in USA and Canada by" Technogym USA.

In the alternative, Plaintiff requested leave to seek jurisdictional discovery. Plaintiff acknowledged he could have sought to continue the hearing on the motion to quash to seek such discovery before filing his opposition, but "believed the evidence he already [had] clearly demonstrated that personal jurisdiction exists, and therefore did not want to delay the resolution of this matter."

The trial court granted the motion to quash. The court denied Plaintiff's request for jurisdictional discovery finding, in part, Plaintiff "has not demonstrated that discovery is likely to lead to the production of evidence of facts establishing jurisdiction."

DISCUSSION

I.    *Personal Jurisdiction*

Plaintiff argues the trial court erred in finding Technogym SpA was not subject to personal jurisdiction. We disagree.

A.    *Legal Background*

"A California court may exercise personal jurisdiction over a nonresident defendant to the extent allowed under the state and federal

3

Constitutions.  (Code Civ. Proc., § 410.10.)  The exercise of personal jurisdiction is constitutionally permissible only if the defendant has sufficient 'minimum contacts' with the forum state so that the exercise of jurisdiction 'does not offend "traditional notions of fair play and substantial justice." [Citations.]'  [Citations.] ... [¶] A defendant that has substantial, continuous, and systematic contacts with the forum state is subject to general jurisdiction in the state, meaning jurisdiction on any cause of action.  [Citations.]  Absent such extensive contacts, a defendant may be subject to specific jurisdiction, meaning jurisdiction in an action arising out of or related to the defendant's contacts with the forum state."  (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1166–1167 (*HealthMarkets*).)

"A nonresident defendant is subject to specific personal jurisdiction only if (1) the defendant purposefully availed itself of the benefits of conducting activities in the forum state; (2) the controversy arises out of or is related to the defendant's forum contacts; and (3) the exercise of jurisdiction would be fair and reasonable.  [Citations.]  'These guidelines are not susceptible of mechanical application, and the jurisdictional rules are not clear-cut.  Rather, a court must weigh the facts in each case to determine whether the defendant's contacts with the forum state are sufficient." (*HealthMarkets, supra,* 171 Cal.App.4th at p. 1167.)  "[W]e apply jurisdictional principles with an abundance of caution where the defendant is a foreign corporation.... ' "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." ' " (*F. Hoffman-La Roche, Ltd. v. Superior Court* (2005) 130 Cal.App.4th 782, 795 (*Hoffman-La Roche*).)

"A plaintiff opposing a motion to quash service of process for lack of personal jurisdiction has the initial burden to demonstrate facts establishing

a basis for personal jurisdiction. [Citation.] If the plaintiff satisfies that burden, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. [Citation.] If there is no conflict in the evidence, the question whether a defendant's contacts with California are sufficient to justify the exercise of personal jurisdiction in this state is a question of law that we review de novo. [Citation.] If there is a conflict in the evidence underlying that determination, we review the trial court's express or implied factual findings under the substantial evidence standard." (*HealthMarkets, supra,* 171 Cal.App.4th at pp. 1167–1168.)

B.     *Analysis*

Plaintiff does not contend Technogym SpA is subject to general jurisdiction. We therefore consider whether it is subject to specific jurisdiction.

Plaintiff must first demonstrate Technogym SpA purposefully availed itself of the benefits of conducting activities in California. " ' "The purposeful availment inquiry ... focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs [its] activities toward the forum so that [it] should expect, by virtue of the benefit [it] receives, to be subject to the court's jurisdiction based on" [its] contacts with the forum. [Citation.]' [Citation.] [¶] '[P]urposeful availment occurs where a nonresident defendant " 'purposefully direct[s]' [its] activities at residents of the forum" [citation], " 'purposefully derive[s] benefit' from" its activities in the forum [citation], "create[s] a 'substantial connection' with the forum" [citation], " 'deliberately' has engaged in significant activities within" the forum [citation], or "has created 'continuing obligations' between [itself] and residents of the forum" [citation]. By limiting the scope of a forum's jurisdiction in this manner, the " 'purposeful availment' requirement ensures

5

that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts...." [Citation.] Instead, the defendant will be subject to personal jurisdiction only if " 'it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the state.' " ' " (*HealthMarkets, supra,* 171 Cal.App.4th at p. 1168.)

Plaintiff argues Technogym SpA has contracts with California businesses, pointing to the statements in the annual reports about Facebook, Google, and other California customers.[1] Plaintiff challenges the trial court's finding that "Technogym" was used in the annual reports to refer to the brand rather than to Technogym SpA. Plaintiff argues the reports indicate they are for Technogym SpA, but the record cite provided in fact states, "this report covers both the consolidated financial statements of the Technogym Group and the financial statements of the parent company Technogym SpA." Technogym Group is identified elsewhere in the reports as Technogym SpA and numerous subsidiaries and affiliated companies. Plaintiff points to instances in the annual reports where "Technogym" refers to Technogym SpA, but this is not inconsistent with the reports' use of "Technogym" to refer to Technogym SpA *and* its subsidiaries and affiliated companies.[2]

---

[1] Technogym SpA argues the post-2015 annual reports and other evidence from after the alleged injury are not relevant to the jurisdictional analysis. We need not decide the issue because we find the evidence insufficient in any event.

[2] Plaintiff also claims the reports define "Technogym" as Technogym SpA, but the record citation provided is to objections to evidence filed by Plaintiff in the trial court. "Citing points and authorities filed in the trial court is not appropriate support for factual assertions in a brief." (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590.)

6

Accordingly, we agree with the trial court that references to "Technogym" in the annual reports are to both Technogym SpA and its subsidiaries and affiliates. The reports therefore do not provide evidence that Technogym SpA has signed contracts with California customers and do not contradict the evidence in Technogym SpA's declaration that it has not.[3]

Moreover, the issuance of consolidated annual reports and the use of a single term to refer to both Technogym SpA and its subsidiaries and affiliates does not impact our jurisdictional analysis. "The cases are unanimous that consolidated reporting is standard business practice and will not support jurisdiction in the absence of evidence establishing an agency relationship. [Citations.] ... 'Consolidating the activities of a subsidiary into the parent's annual reports is a common business practice." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 549–550 (*Sonora Diamond*); accord, *BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 432 (*BBA Aviation*).) "[C]onsolidated media releases . . . , consolidated reporting, joint employment of professional services, and the use of 'we' or 'the company' are typical and actually expected of affiliated or wholly owned companies, and such facts do not establish agency for purposes of jurisdiction." (*Hoffman-La Roche, supra,* 130 Cal.App.4th at p. 801.)

Similarly, there is no evidence that the internet job postings for California sales developers with "Technogym" were for employment with Technogym SpA rather than Technogym USA, and Technogym SpA's

---

[3] Plaintiff complains the averments in the Technogym SpA and Technogym USA declarations are vague and general, but he fails to demonstrate they are invalid or have been contradicted. (Cf. *Swenberg v. dmarcian, Inc.* (2021) 68 Cal.App.5th 280, 297 (*Swenberg*) ["this [declarant's] general statement does not suffice to refute [another declarant's] specific one"].)

7

declarations provide evidence to the contrary. In claiming otherwise, Plaintiff cites to a website link, a practice repeated elsewhere in his brief. Plaintiff did not file a request that this court take judicial notice of the existence of these websites, nor does he provide any record citation demonstrating he made such a request to the trial court. We therefore disregard Plaintiff's citations to these websites. (*Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 744 ["[D]efendants have not complied with the applicable rules for seeking judicial notice on either the trial court or the appellate level as to these materials. We do not consider the material."].)

Plaintiff next contends purposeful availment is shown by evidence that Technogym SpA sold its products to Technogym USA knowing that Technogym USA was reselling them in California. "[M]ere knowledge" that the purchaser of a product will sell that product in California, "without something more, is insufficient to establish jurisdiction in a forum state." (*Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 604 (*Bombardier*); see *ibid.* [manufacturer's knowledge that purchaser of fuel tanks would use them "in personal watercraft that would be sold in California ... would still not provide sufficient minimum contacts with California"].)[4] *Jayone Foods, Inc. v.*

_____

[4] Although Plaintiff argues the "stream of commerce" theory applies, a majority of the United States Supreme Court has agreed that entering a product into the stream of commerce with knowledge the product will enter the forum state is, without more, insufficient to establish jurisdiction. (*Bombardier, supra,* 216 Cal.App.4th at pp. 600–604 [discussing plurality and concurring opinions in *J. McIntyre Machinery, Ltd. v. Nicastro* (2011) 564 U.S. 873 (*J. McIntyre*)].) We agree with *Bombardier*'s analysis of *J. McIntyre* and *Bombardier*'s reliance, in areas left unresolved by *J. McIntyre,* on the California Supreme Court's description of the purposeful

8

*Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, relied on by Plaintiff, is distinguishable. In that case, the foreign manufacturer sold its product directly to multiple distributors *located in California* and, on a visit to one of these distributors, went to a California retail store so that the foreign manufacturer's representatives "could observe the placement of the products inside the store as well as the store's clientele." (*Id.* at p. 557.) The Court of Appeal concluded the manufacturer "made direct efforts to serve a California market by repeatedly selling and shipping its consumer products to multiple distributors in California." (*Ibid.*) In contrast, Technogym SpA sold its product to a Washington company with a principal place of business in New Jersey, and there is no evidence a Technogym SpA representative ever visited California distributors or California stores selling its products.

Plaintiff points to the website operated by Technogym SpA listing support teams and a retail store in California, suggesting this shows Technogym SpA has California employees and a California store. Again, although the website is operated by Technogym SpA, the United States version of the website states that products and services are provided by Technogym USA. The declarations from Technogym SpA and Technogym USA are evidence that Technogym SpA does not have California employees or a California store. Moreover, the operation of the website itself does not constitute purposeful availment. " ' "Creating a site, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide— but, without more, it is not an act purposefully directed toward the forum state.' " [Citation.] Otherwise, 'personal jurisdiction in Internet-related

---

avilment requirement as set forth in that case. (*Bombardier,* at pp. 600– 603.)

9

cases would almost always be found in any forum in the country.' "
(*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 274.)

*Swenberg v. dmarcian, Inc., supra,* 68 Cal.App.5th 280, relied on by Plaintiff, is distinguishable. In *Swenberg,* the plaintiff sued his former employer, a California company, and a resident of the Netherlands who was the general manager of a European affiliate. (*Id.* at pp. 284, 296.) There was uncontradicted evidence that the Netherlands resident "publicly present[ed] himself as a leader of" the California company, the European affiliate's website "automatically route[d]" to the California company's website, and prospective customers who contacted the website were directed to the European affiliate by a California-based employee of the California company. (*Id.* at pp. 297–298.) The Court of Appeal concluded, "Having established and made economic use of a relationship with a California company and its employees, [the Netherlands resident] could reasonably expect to be subject to the jurisdiction of California courts in litigation connected to this relationship." (*Id.* at p. 298.) Technogym USA is not a California company; the United States version of the website clearly states it is operated by Technogym SpA but products and services are provided by Technogym USA; and there is no evidence that Technogym SpA receives customer leads from Technogym USA, much less from a California-based employee of a California company. Plaintiff has not demonstrated that Technogym SpA "established and made economic use of a relationship with a California company and its employees."

Plaintiff separately argues Technogym SpA is subject to jurisdiction because of its subsidiary Technogym USA. Plaintiff relies on "the representative services doctrine," pursuant to which jurisdiction is conferred over a foreign parent corporation "because the foreign parent corporation

10

permitted the subsidiary to perform acts in the forum state that the parent would otherwise have had to perform itself as a part of the parent's expected business operations." (*Sonora Diamond, supra,* 83 Cal.App.4th at pp. 542–543.) We reject the contention. First, "representative services supports general jurisdiction" (*id.* at p. 543, fn. 13), which Plaintiff has disavowed. (See also *Hoffman-La Roche, supra,* 130 Cal.App.4th at p. 798 ["Under the representative services doctrine, ... *general jurisdiction* may be exercised over a related foreign defendant principal...." (italics added)]; accord, *BBA Aviation, supra,* 190 Cal.App.4th at p. 430.) Second, the United States Supreme Court has criticized a lower court's jurisdictional finding based on the lower court's "observation that [a subsidiary's] services were 'important' to [the parent company], as gauged by [the parent's] hypothetical readiness to perform those services itself if [the subsidiary] did not exist. Formulated this way, the inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer: 'Anything a corporation does through an independent contractor, subsidiary, or distributor is presumably something that the corporation would do "by other means" if the independent contractor, subsidiary, or distributor did not exist.' " (*Daimler AG v. Bauman* (2014) 571 U.S. 117, 135–136.) *Daimler* appears to reject the representative services doctrine or, at the least, directs courts to apply it narrowly. Even assuming the doctrine remains viable, it does not apply where, as here, the parent company did not control the day-to-day operations of the subsidiary and the two functioned as fully independent entities. (See *Hoffman-La Roche, supra,* 130 Cal.App.4th at pp. 800, 802 [where Swiss company did not exert control over "day-to-day operations" of affiliated U.S. companies and U.S. companies "function[ed] as independent entities," U.S. companies did not "act[] as mere

11

instrumentalities of [Swiss company] in the furtherance of *its* business" and representative services doctrine did not apply].)

Technogym USA's status as Technogym SpA's subsidiary also does not constitute purposeful availment. "The mere ownership of a subsidiary does not subject a nonresident parent company to specific personal jurisdiction based on the subsidiary's forum contacts. Ownership of a subsidiary alone does not constitute purposeful availment. Rather, purposeful availment requires some manner of deliberately directing the subsidiary's activities in, or having a substantial connection with, the forum state." (*HealthMarkets, supra,* 171 Cal.App.4th at p. 1169.) Accordingly, "A parent company purposefully avails itself of forum benefits through the activities of its subsidiary, as required to justify the exercise of specific personal jurisdiction, if and only if the parent deliberately directs the subsidiary's activities in, or having a substantial connection with, the forum state. Only in those circumstances should the parent company 'reasonably anticipate being haled into court' [citation] in the forum state based on the activities of its subsidiary." (*Ibid.*) Plaintiff's evidence establishes that Technogym SpA is aware of Technogym USA's California activities, but it does not demonstrate Technogym SpA deliberately directed them.

We therefore conclude Plaintiff failed to establish that Technogym SpA purposefully availed itself of the benefits of conducting activities in California.[5] Because of this conclusion, we need not consider the remaining two prongs of the specific jurisdiction inquiry.

---

[5] At oral argument, Plaintiff's counsel relied heavily on the facts of *J. McIntyre, supra,* 564 U.S. 873. In *J. McIntyre,* a foreign manufacturer sold its machines in the United States through an independent distributor; the manufacturer attended annual trade shows in the United States, but not in the forum state of New Jersey; and no more than four machines ended up in

12

II.    *Discovery*

Plaintiff argues the trial court erred in denying Plaintiff's alternative request for discovery.

"A plaintiff attempting to assert jurisdiction over a nonresident defendant is entitled to an opportunity to conduct discovery of the jurisdictional facts necessary to sustain its burden of proof.  [Citation.]  In order to prevail on a motion for a continuance for jurisdictional discovery, the plaintiff should demonstrate that discovery is likely to lead to the production of evidence of facts establishing jurisdiction."  (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 127 (*Automobile Antitrust*).)  "A ruling on a motion to continue in order to allow additional time to discover jurisdictional facts lies in the trial court's discretion.  On appeal, we will not reverse the trial court's ruling unless we find a manifest abuse of that discretion."  (*Ibid.*)

Plaintiff contends discovery "could uncover further direction by Technogym of its good[s] and services toward the State of California," "could also reveal Technogym's overt acts aimed at selling its products in

_____

New Jersey.  (*Id.* at p. 876 (plur. opn. of Kennedy, J.).)  Plaintiff's counsel argued that, although a majority of the United States Supreme Court found no purposeful availment, the case was an extremely close one, and asserted that had one fact been different—had the distributor been a subsidiary, had the manufacturer attended trade shows in New Jersey, or had more than four machines ended up in New Jersey—the outcome would have been different. We do not so read the case, which left uncertain what additional facts would have changed the outcome.  (See *id.* at p. 886 (plur. opn. of Kennedy, J.); *id.* at p. 889 (conc. opn. of Breyer, J.); see also *Bombardier, supra,* 216 Cal.App.4th at p. 602 ["*J. McIntyre* ... cleared the air only slightly.... [T]he high court has not agreed on exactly what more besides [placing a product in the stream of commerce knowing the product may or will end up in the forum state] must be shown...."].)

California," and/or "could also show an alter ego relationship (for example, perhaps by showing commingling of assets, officers, etc.)." The standard is not whether discovery "could" lead to the production of evidence establishing jurisdiction, it is whether discovery is *likely* to do so. Plaintiff's speculation does not meet this standard and therefore is not sufficient to establish the trial court abused its discretion. (See *Automobile Antitrust, supra,* 135 Cal.App.4th at p. 127 [where the plaintiffs "failed to show that further discovery was likely to lead to the production of evidence establishing jurisdiction, ... the trial court did not abuse its discretion by rejecting plaintiffs' request for a continuance to conduct further jurisdictional discovery"].)

## DISPOSITION

The order is affirmed. Respondent is awarded its costs on appeal.

_____

SIMONS, J.

We concur.

_____

JACKSON, P. J.

_____

BURNS, J.

(A160941)

15